[No. S107616. Feb. 23, 2004.]

HUSKINSON & BROWN, LLP, Plaintiff and Respondent, v.
MERVYN H. WOLF et al., Defendants and Appellants.

454

**COUNSEL**

Law Offices of Marc Appell, Appell & Wolf, Marc J. Appell and Brent I. Rosenweig for Defendants and Appellants.

Huskinson & Brown and Clark L. McCutchen for Plaintiff and Respondent.

Werchick & Werchick and Arne Werchick for Arthur Cambers as Amicus Curiae on behalf of Plaintiff and Respondent.

Jerome Fishkin for Attorney Discipline Defense Counsel as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—This case concerns a dispute between two law firms over compensation for legal services performed for a client who prevailed in a lawsuit against a third party. Rule 2-200 of the California Rules of Professional Conduct (all further references to rules are to these rules) bars law firms from dividing client fees among themselves if the client has not given written consent to the agreed division after a full written disclosure of its terms. (Rule 2-200(A)(1).) Here, plaintiff and defendants had entered into a fee-sharing agreement without providing written disclosure to the client or obtaining her written consent. Although rule 2-200 precludes enforcement of that agreement, may plaintiff nonetheless recover from defendants the reasonable value of the legal services it rendered on the client's behalf? Consistent with the language and intent of rule 2-200, and with analogous statutory and case law providing that attorneys may recover in quantum meruit for the reasonable value of their legal services from their clients when their contractual fee arrangements are found to be invalid or unenforceable, we conclude that plaintiff may. In holding that rule 2-200 does not preclude quantum meruit recovery when its client disclosure and consent requirements are not met, we emphasize that our decision in no way increases the attorney fees paid or owed by the client in such a situation.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Huskinson & Brown is a law firm that specializes in defending health care providers. Beverly Sanchez approached plaintiff with a potential medical malpractice claim against a health care provider. Plaintiff referred the matter to defendants Mervyn H. Wolf and the law firm of Appell & Wolf. Although defendants took responsibility for prosecuting Sanchez's action, plaintiff paid $800 to a medical expert involved in her lawsuit. Plaintiff also performed 20 hours of legal services on Sanchez's case, which the trial court later valued at $250 per hour. In exchange for the referral, defendants orally agreed to pay plaintiff 25 percent of any attorney fees recovered.

Following a $250,000 judgment in Sanchez's favor, defendants received attorney fees from Sanchez but failed to pay 25 percent of the fees to plaintiff

in accordance with their oral agreement. Plaintiff then sued defendants for, among other things, breach of contract, unjust enrichment, and recovery in quantum meruit.

The matter was tried to the court. The trial court denied recovery on plaintiff's breach of contract cause of action, finding the fee-sharing agreement unenforceable because it was not disclosed to Sanchez in writing and her written consent was not obtained. On the unjust enrichment cause of action, however, the court awarded $18,497.91, an amount equal to what plaintiff would have received under the unenforceable fee-sharing agreement. As an alternative to the unjust enrichment award, the court awarded plaintiff $5,800 in quantum meruit for the legal services and costs it rendered on behalf of Sanchez.

The Court of Appeal agreed that breach of contract recovery was unavailable, but reversed the judgment and directed the trial court to enter a new judgment awarding plaintiff $800 in damages and an additional sum for costs and disbursements under Code of Civil Procedure section 1032. The appellate court concluded the unjust enrichment award was in error because the contractual fee-sharing arrangement violated rule 2-200. It further found the alternative quantum meruit award of $5,800 improper to the extent $5,000 of that award represented fees for legal work.[1]

We granted plaintiff's petition for review and later ordered briefing, limited to the issue of quantum meruit recovery.

### DISCUSSION

Rule 2-200 provides in relevant part that a member of the State Bar "shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless . . . [¶] . . . [t]he client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division . . . ." (Rule 2-200(A)(1).) In *Chambers v. Kay* (2002) 29 Cal.4th 142 [126 Cal.Rptr.2d 536, 56 P.3d 645] (*Chambers*), we held that an attorney may not recover on an agreement with another attorney to divide contingent fees generated from the successful prosecution of a client's case in the absence of compliance with rule 2-200's written client consent requirement. The central issue here is whether, in the absence of written client consent to an agreement between law firms to divide fees, a law firm that is barred from dividing fees under rule

---

[1] Defendants do not dispute the Court of Appeal's conclusion that the trial court's award of $5,800 in quantum meruit actually represented two awards: one for $800 in monies owed, and another for $5,000 for the reasonable value of legal services rendered.

2-200 may nonetheless recover from the other law firm in quantum meruit for the reasonable value of services it rendered to advance the client's case.[2]

 Quantum meruit refers to the well-established principle that "the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." (*Long v. Rumsey* (1938) 12 Cal.2d 334, 342 [84 P.2d 146].) To recover in quantum meruit, a party need not prove the existence of a contract (*Maglica v. Maglica* (1998) 66 Cal.App.4th 442, 449 [78 Cal.Rptr.2d 101]; *Mayborne v. Citizens Trust & Savings Bank* (1920) 46 Cal.App. 178, 182 [188 P. 1034]), but it must show the circumstances were such that "the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made" (*Estate of Mumford* (1916) 173 Cal. 511, 523 [160 P. 667]; see *Long v. Rumsey, supra,* 12 Cal.2d at p. 342; *Crane v. Derrick* (1910) 157 Cal. 667, 672 [109 P. 31]; see generally 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 113, p. 138). Here, the quantum meruit award reflects the trial court's implicit determination that plaintiff did not gratuitously offer the services covered by that award and that all parties herein expected plaintiff would be compensated for its work in the event attorney fees were recovered in Sanchez's case. Nonetheless, defendants contend, in essence, that they owe plaintiff nothing because allowing recovery on an implied promise to pay for plaintiff's services is tantamount to permitting a division of client fees, in contravention of rule 2-200.[3]

To resolve this issue, we look first to rule 2-200 to ascertain what it seeks to accomplish. By its terms, the rule expressly prohibits attorneys from "divid[ing] a fee for legal services" when certain requirements, such as written client consent to the fee division after a full written disclosure of its terms, have not been met. Notably, however, rule 2-200 does not purport to restrict attorney compensation on any basis other than a division of fees. Nor does it suggest that attorneys or law firms are categorically barred from making or accepting client referrals, from agreeing to a division of labor on a client's case, or from actually working on a case where labor is divided.

---

[2] *Chambers, supra,* 29 Cal.4th 142, contained a discussion relating to quantum meruit recovery, but it did not resolve the issue presented here. Upon clarifying that it was not addressing whether or not an attorney may recover the reasonable costs of services rendered in the absence of written client consent to an agreed fee division (*id.* at p. 161, fn. 11), *Chambers* merely recognized that, to the extent such recovery is available, the particular fee that two attorneys negotiate without the client's consent does not furnish a proper basis for calculating the amount of recovery. (*Id.* at p. 162.)

[3] Defendants argue: "Even assuming that [plaintiff] did provide the services [it] alleged, they were provided after the case was referred to [defendants] and were provided either voluntarily, as Sanchez was a friend, *or were provided with the expectation that [plaintiff] would receive a percentage fee.*" (Italics added.) To the extent defendants maintain here that plaintiff volunteered the 20 hours of legal services covered by the trial court's quantum meruit award, defendants forfeited that issue by failing to raise it in the Court of Appeal.

The question arises whether a quantum meruit award for services rendered in reliance on a fee-sharing agreement that lacks written client consent constitutes a division of fees within the rule's contemplation. We think not. True, a quantum meruit award as such would serve to compensate for legal services that have been performed pursuant to an agreement rendered unenforceable under rule 2-200. But when based on the reasonable value of those services, such an award involves no apportionment of the fees that the client paid or has agreed to pay and therefore is not a fee division subject to rule 2-200's client disclosure and consent requirements.

Formal Opinion No. 1994-138 of the State Bar Standing Committee on Professional Responsibility and Conduct (State Bar, Formal Opinion No. 1994-138) clarifies that rule 2-200 does not apply where there is no direct division of client-paid fees. For example, if a law office that works directly with a client agrees to pay an "outside" lawyer $50 per hour for his or her services, and bills that work to the client at $70, the proposed compensation would not trigger rule 2-200's requirements because the outside lawyer would not be paid a percentage of the fees collected from the client. (State Bar, Formal Opn. No. 1994-138, *supra*, at pp. 3–4.) That is, "the amount paid to the outside lawyer is not tied to specific legal fees received by the law office." (*Id.* at p. 4.) Like an hourly fee arrangement, an award of compensation based on the number of hours plaintiff worked on Sanchez's case would not divide or be otherwise tied to the specific legal fees she paid.

We next examine whether allowing recovery in quantum meruit would undermine compliance with the Rules of Professional Conduct. As we recently explained, the purpose of rule 2-200's disclosure and consent requirements is to safeguard the right of clients to know how their legal fees will be determined and the extent of, and the basis for, their attorneys' sharing of fees. (*Chambers*, *supra*, 29 Cal.4th at pp. 156–157.) In the case of pure referral fee arrangements, " '[k]nowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has "sufficient compensation" to be able to share fees with the referring attorney.' " (*Id.* at p. 157.) Similarly, in cases where a division of legal services prompts the fee division, written disclosure of such information "is indispensable to the client's ability to make an informed decision regarding whether to accept the fee division and whether to retain or discharge a particular attorney." (*Ibid.*) In both instances, requiring the client's written consent to fee sharing "impresses on the client the importance of consent and the right to reject a fee division." (*Ibid.*) In holding that attorneys may not recover on a fee-sharing agreement in contravention of rule 2-200, *Chambers* refused to "countenanc[e] and contribut[e] to a violation of a rule we

formally approved in order 'to protect the public and to promote respect and confidence in the legal profession.' " (29 Cal.4th at p. 158, quoting rule 1-100(A), 1st par.)

Allowing recovery in quantum meruit would not discourage compliance with rule 2-200. Attorneys who negotiate contingent fee-sharing agreements, which take into account the risk that the client pays no fee if the client does not prevail in his or her case, understandably prefer to receive their negotiated fees rather than the typically lesser amounts representing the reasonable value of the work performed. Consequently, even if quantum meruit recovery is available when the absence of client notification or consent renders a fee-sharing agreement unenforceable, such attorneys have no less incentive to comply with rule 2-200. The facts of this case illustrate the point precisely. If the parties had obtained Sanchez's written consent to the agreed fee sharing as rule 2-200 requires, plaintiff might have received $18,497.91 in fees. As determined by the trial court, however, the reasonable value of plaintiff's 20 hours of legal services was only $5,000. Because the negotiated fee far exceeds the amount of quantum meruit recovery, we may logically assume that, notwithstanding the availability of quantum meruit recovery, plaintiff and all other similarly situated law firms and attorneys remain fully motivated to see that all of their future fee-sharing agreements comply with rule 2-200.

The Legislature's regulation of fee agreements between attorneys and clients favors the availability of quantum meruit recovery. Business and Professions Code section 6147 requires attorneys who represent clients on a contingent fee basis to obtain signed written fee agreements from their clients. (*Id.*, subd. (a).) Similarly, Business and Professions Code section 6148 generally requires attorneys in noncontingent fee cases to procure signed written contracts from clients reflecting rates, fees, and charges whenever it is reasonably foreseeable that their legal expenses will exceed $1,000. (*Id.*, subd. (a).)

■ Like rule 2-200, both Business and Professions Code provisions operate to ensure that clients are informed of and agree to the terms by which the attorneys who represent them will be compensated. But while both statutes provide that a failure to comply with their requirements renders an agreement voidable at the client's option, both also specify that, where an agreement is voided, the attorney remains "entitled to collect a reasonable fee." (Bus. & Prof. Code, §§ 6147, subd. (b), 6148, subd. (c).) Allowing quantum meruit recovery when two law firms negotiate a fee-sharing agreement without complying with rule 2-200's written client consent requirement is consistent with the Legislature's policy determination that, even if a particular fee or compensation agreement is not in writing or signed by the client, a law firm laboring under such an agreement nonetheless deserves reasonable compensation for its services.

■ Permitting quantum meruit recovery as between law firms is also consistent with case law holding or otherwise recognizing that attorneys may recover from their clients the reasonable value of their legal services when their fee contracts or compensation agreements are found to be invalid or unenforceable for other reasons. (See, e.g., *Calvert v. Stoner* (1948) 33 Cal.2d 97 [199 P.2d 297] (*Calvert*); *Rosenberg v. Lawrence* (1938) 10 Cal.2d 590 [75 P.2d 1082] (*Rosenberg*); *Wiley v. Silsbee* (1934) 1 Cal.App.2d 520 [36 P.2d 854] (*Wiley*).)

In *Rosenberg, supra*, 10 Cal.2d 590, an importer (the client) hired a custom house broker to obtain refunds on importation duties paid to the government. The broker arranged for two attorneys to handle the matter on a contingent fee basis whereby the attorneys would receive 50 percent of any amount recovered. (*Id.* at p. 593.) Without the client's knowledge or consent, however, the broker and the attorneys agreed that the broker would receive a portion of any fees the attorneys received. (*Ibid.*)

*Rosenberg* held that, assuming the agreement between the client and the attorneys was invalid because of the provision calling for payment of a portion of the fee to the broker, the attorneys nevertheless were entitled to recover against the client in quantum meruit. (*Rosenberg, supra*, 10 Cal.2d at p. 594.) Notably, *Rosenberg* reached this conclusion over the objection of three dissenting justices that " '[a] champertous agreement being unlawful, it would seem clear that compensation for services rendered under it could not be recovered upon a *quantum meruit*, any more than upon the agreement itself, without overturning the very foundations upon which the rule refusing to enforce unlawful agreements is based.' " (*Id.* at p. 602 (dis. opn. of Houser, Seawell, & Curtis, JJ.).)

A similar result obtained in *Wiley, supra*, 1 Cal.App.2d 520. In *Wiley*, an attorney and his client negotiated a contingent fee contract to secure a divorce for the client. Rejecting the client's contentions to the contrary, *Wiley* held that, even though case law firmly established that the subject contract was void as against public policy, "there arises an implied contract to pay for services rendered thereunder, and the remedy of action sounding in *quantum meruit* is available to recover the reasonable value thereof." (1 Cal.App.2d at p. 522; see also *Ayres v. Lipschutz* (1924) 68 Cal.App. 134, 139 [228 P. 720] [opinion by the California Supreme Court denying review but stating its conclusion that, although the contract at issue was void as against public policy because "under it the attorneys were directly and financially interested in preventing a reconciliation and in bringing about a divorce," recovery "could have been had . . . upon a *quantum meruit*"].)

*Calvert, supra*, 33 Cal.2d 97, is in accord. In that case, a client had alleged that his attorney's fee agreement contained an improper provision that

unreasonably limited his ability to settle. (*Id.* at p. 103.) *Calvert* observed in dictum that, even assuming the challenged provision rendered the entire contract invalid, the attorney "would be entitled to compensation based on the reasonable value of services performed." (*Id.* at p. 105; see also *Magee v. Brenneman* (1922) 188 Cal. 562, 571 [206 P. 37] [even though attorney did not rebut presumption of unfairness in having obtained client's execution of promissory note and mortgage to secure payment of legal fees, thus rendering the transaction voidable, trial court could properly find that attorney had been compensated a reasonable fee for services performed].)

Defendants do not address the analogous statutory and case law allowing attorneys to recover the reasonable value of their legal services from their clients when their fee agreements are found to be invalid or unenforceable. Instead they urge us to follow *Finnegan v. Schrader* (2001) 91 Cal.App.4th 572 [110 Cal.Rptr.2d 552] (*Finnegan*).

In *Finnegan*, a public official violated the conflicts-of-interests prohibitions of Government Code section 1090 by accepting an appointment as district manager of a sanitary district before resigning his position as a member of the district's board of directors. The trial court had ordered the public official to restore to the district all wages and benefits he had received under his district manager employment contract, and the Court of Appeal affirmed that order. Emphasizing that the employment contract violated Government Code section 1090 and was "against the express prohibition of the law," the appellate court reiterated the oft-cited rule that " ' "courts will not entertain any rights growing out of [an illegal contract], or permit a recovery upon quantum meruit or quantum valebat." ' " (*Finnegan, supra,* 91 Cal.App.4th at p. 583.)

*Finnegan* does not aid defendants' position. That decision acknowledged that the matter before it involved the application of "settled law that where a contract is made in violation of [Government Code] section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract without restoring any of the benefits it has received." (*Finnegan, supra,* 91 Cal.App.4th at p. 583.) Nothing in *Finnegan,* however, warrants reconsideration of the equally settled principle that an attorney who is barred from recovering against a client under an invalid or unenforceable compensation agreement may nonetheless recover in quantum meruit for the reasonable value of his or her legal services. (See *Calvert, supra,* 33 Cal.2d at p. 105; *Rosenberg, supra,* 10 Cal.2d at 594; *Magee v. Brenneman, supra,* 188 Cal. at p. 571; *Wiley, supra,* 1 Cal.App.2d at p. 522.)

Defendants do not convince us that their unconsented-to fee-sharing agreement with plaintiff is sufficiently analogous to the employment contract at

issue in *Finnegan* so as to justify similar treatment. As *Finnegan* makes clear, public officials who fail to adhere to Government Code section 1090 act in violation of an express statutory prohibition, and any contract resulting from such a violation is considered illegal. (*Finnegan, supra,* 91 Cal.App.4th at p. 583.) By contrast, although we approved rule 2-200 in order "to protect the public and to promote respect and confidence in the legal profession" (rule 1-100(A), 1st par.), and although the rule is binding on attorneys (*ibid.*), attorneys do not act in violation of an express statutory prohibition when providing legal services pursuant to a fee-sharing agreement lacking written client consent. Where services are rendered under a contractual compensation arrangement that is unenforceable as against public policy, but the subject services are not otherwise prohibited, quantum meruit may be allowed. (See, e.g., *Lawn v. Camino Heights, Inc.* (1971) 15 Cal.App.3d 973, 980–983 [93 Cal.Rptr. 621] [consulting services pertaining to subdivision development]; *Trumbo v. Bank of Berkeley* (1947) 77 Cal.App.2d 704, 710 [176 P.2d 376] [preincorporation services provided to promoters of a bank]; *Wiley, supra,* 1 Cal.App.2d at p. 522 [legal services].) ■ On this last point, we emphasize once again that rule 2-200 does not purport to categorically prohibit attorneys from making or accepting client referrals, from agreeing to divide the labor on a client's case, or from working on cases with attorneys from other law firms. By its terms, the rule merely bars attorneys who engage in such conduct from dividing client fees among themselves when certain requirements, such as written client consent to the fee division, have not been met.

Finally, we have found cases in which courts have disallowed quantum meruit recovery to attorneys who violated one of the Rules of Professional Conduct. Those cases, however, involved violations of a rule that proscribed the very conduct for which compensation was sought, i.e., the rule prohibiting attorneys from engaging in conflicting representation or accepting professional employment adverse to the interests of a client or former client without the written consent of both parties. (E.g., *Jeffry v. Pounds* (1977) 67 Cal.App.3d 6, 12 [136 Cal.Rptr. 373] [barring quantum meruit recovery from the time that attorney undertook to represent a wife in her marital dissolution proceedings against her husband, the current client of the attorney's law firm, in violation of former rule 5-102, a predecessor to rule 3-310]; *Goldstein v. Lees* (1975) 46 Cal.App.3d 614 [120 Cal.Rptr. 253] [finding quantum meruit recovery inappropriate where former corporate counsel labored under a conflict of interest in representing a minority shareholder and director of his former client in a proxy battle, in violation of predecessor rule to rule 3-310].) Here, of course, rule 2-200 does not bar the services plaintiff rendered on Sanchez's behalf; it simply prohibits the dividing of Sanchez's fees because she was not provided written disclosure of the fee-sharing agreement and her written consent was not obtained.

CONCLUSION AND DISPOSITION

We conclude that, even though rule 2-200 precludes plaintiff from recovering on its fee-sharing agreement with defendants, plaintiff may nonetheless recover from defendants the reasonable value of the legal services it rendered on the client's behalf.

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.