[No. B213479. Second Dist., Div. Three. May 13, 2010.]

MKB MANAGEMENT, INC., Plaintiff and Appellant, v.
ANDRE O. MELIKIAN, Individually and as Trustee, etc., et al., Defendants
and Respondents.

COUNSEL

Pariser & Pariser and Wayne D. Pariser for Plaintiff and Appellant.

Law Offices of Steven J. Haber and Steven J. Haber for Defendants and Respondents.

OPINION

CROSKEY, Acting P. J.—MKB Management, Inc. (MKB), appeals a judgment of dismissal following the sustaining of a demurrer to its complaint without leave to amend. MKB alleges that Andre O. Melikian and several related companies failed to pay amounts due to MKB as the manager of rental properties under a property management agreement. The trial court concluded that the principal object of the agreement was the performance of acts for which a real estate broker license was required and that MKB could not enforce any part of the agreement or recover any compensation because it did not possess such a license.

MKB contends it is entitled to maintain this action to recover compensation for services for which no real estate broker license was required regardless of whether other services that it provided required such a license. We conclude that the sustaining of the demurrer to the counts for breach of contract based on the absence of a real estate broker license was error and that the trial court must exercise its discretion to determine whether the doctrine of severability applies so as to allow the recovery of compensation for services for which no such license was required. We also conclude that the sustaining of the demurrer to the common counts was error and that the judgment cannot be affirmed based on the absence of a contractor's license. We therefore will reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Property Management Agreement

MKB and Melikian entered into a new management agreement dated January 1, 2007, in which Melikian as owner granted MKB "the exclusive right to rent, lease, operate and manage" several apartment buildings. Melikian granted MKB the authority to advertise rentals; sign, renew, and cancel leases; collect rents and other charges; terminate tenancies and sign notices on behalf of the owner; prosecute unlawful detainer actions; cause

repairs and alterations to be made; decorate the premises; purchase supplies; hire and supervise employees to operate and maintain the premises; and contract with others for services on behalf of the owner. MKB agreed to deposit in Melikian's account at a financial institution all receipts less disbursements. Melikian agreed to pay any expenses in excess of the receipts and also agreed to pay a management fee of the greater of $2,000 per month or 4 percent of the gross rents.

### 2.   Complaint, Demurrer, and First Amended Complaint

MKB filed a complaint in June 2008 against Melikian, individually and as trustee of the Andre O. Melikian 2003 Trust; 228 S. Mariposa LLC; 452 S. Mariposa LLC; 470 S. Mariposa LLC; 5030–5032 Maplewood LLC; and 4122 W. 2nd LLC. MKB alleged that defendants failed to pay amounts due under the property management agreement and failed to pay for services rendered and money paid by MKB at defendants' request. A copy of the property management agreement was attached to the complaint. MKB alleged that Melikian was a party to the written agreement and that the other defendants had orally agreed to pay amounts due under the agreement. MKB alleged counts for (1) breach of a written contract, against Melikian; (2) breach of an oral contract, against the other defendants; and (3) common counts for quantum meruit and money paid, against all defendants.

Defendants jointly demurred to the complaint, arguing that MKB failed to allege possession of a real estate broker license. They argued that such a license was required for the services described in the property management agreement and that absent an allegation of licensure MKB could not recover payment for the alleged services.

MKB filed a first amended complaint in August 2008, before the scheduled hearing on the demurrer, alleging the same three counts against the same defendants. MKB also alleges that it was exempt from the real estate broker license requirement because any services for which such a license was required were of the types described in Business and Professions Code section 10131.01, subdivision (a)(3), and it performed those services under the supervision and control of Melikian, a licensed real estate broker. MKB alleges further that it was exempt from the contractor's license requirement pursuant to Business and Professions Code section 7048 because the charges for any services for which such a license otherwise might be required were less than $500 per undertaking or project. MKB seeks damages in the amount of not less than $37,919.63 on each count.

### 3. *Demurrer to First Amended Complaint*

Defendants jointly demurred to the complaint, repeating the same arguments from their original demurrer. They also argued that the exemption of Business and Professions Code section 10131.01, subdivision (a)(3) was inapplicable because Melikian was not an employee of MKB and because the services rendered under the property management agreement were beyond the scope of those specified in the statute. Defendants argued further that a contractor's license was required for some of the services provided under the contract, that the exemption for projects under $500 was inapplicable, and that MKB could not recover payment for those services.

MKB argued in opposition to the demurrer that some of the services provided did not require either a real estate broker license or a contractor's license and that it was entitled to recover payment for those services even if it could not recover payment for other services for which it did not have the required license. MKB also argued that it was exempt from the real estate broker license requirement with respect to some of the services provided, that the agreement was severable as to those services, and that it was entitled to recover payment for those services. MKB argued further that it was exempt from the contractor's license requirement.

The trial court concluded that the property management agreement was unlawful because its *"principal object"* was for MKB, which admittedly possessed no real estate broker license, to provide services for which a real estate broker license was required. The court concluded that the exemption under Business and Professions Code section 10131.01, subdivision (a)(3) was inapplicable. The court stated further that the courts will not enforce illegal contracts as a matter of law or lend assistance to parties seeking compensation for illegal acts, and that to sever the illegal parts and enforce the rest of such an agreement would undermine the real estate licensing laws.[1] The court therefore sustained the demurrer without leave to amend and entered a judgment of dismissal.

### CONTENTIONS

MKB contends (1) the lack of a real estate broker license does not preclude its recovery for services for which no such license was required;

---

[1] The court stated: "It is well settled that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; courts will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. *Yoo v. Jho* (2007) 147 Cal.App.4th 1249, 1255 [55 Cal.Rptr.3d 243]. Any possible injustice to the parties is outweighed by the importance of deterring illegal conduct. *Id.* [¶] Nor has plaintiff cited any authority that contracts governed by the real estate licensing statutes can be severed and the not-illegal portions enforced. To permit such action would appear to be contrary to the object of this licensing law."

(2) it was statutorily exempt from the real estate broker license requirement pursuant to Business and Professions Code section 10131.01, subdivision (a)(3); (3) the lack of a contractor's license does not preclude its recovery for services for which no such license was required; and (4) it was statutorily exempt from the contractor's license requirement pursuant to Business and Professions Code section 7048.

## DISCUSSION

### 1. Standard of Review

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*) We affirm the judgment if it is correct for any reason, regardless of the trial court's stated reasons. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)

### 2. The Sustaining of the Demurrer Based on the Absence of a Real Estate Broker License Was Error

#### a. Real Estate License Requirement

A plaintiff seeking to recover compensation for acts for which a real estate license was required must allege that he or she possessed the required license at the time the cause of action arose. (Bus. & Prof. Code, § 10136.)[2] Section 10136, however, does not prevent a plaintiff from seeking compensation for acts for which no real estate license was required. Some of the services provided under the property management agreement required a real estate broker license, but others did not. A broker's license was required for offering for lease and leasing apartment units and collecting rents (*id.,* § 10131, subd. (b)), but was not required for other management duties such as causing repairs to made, decorating, and general maintenance.

---

[2] "No person engaged in the business or acting in the capacity of a real estate broker or a real estate salesman within this State shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose." (Bus. & Prof. Code, § 10136.)

### b. *Breach of Contract Counts*

██ The extent to which the property management agreement and the alleged oral agreement to pay amounts due under that agreement may be enforceable depends on the doctrine of severability. "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." (Civ. Code, § 1599.) The doctrine of severability, codified in Civil Code section 1599, "preserves and enforces any lawful portion of a parties' contract that feasibly may be severed." (*Marathon Entertainment, Inc. v. Blasi* (2008) 42 Cal.4th 974, 991 [70 Cal.Rptr.3d 727, 174 P.3d 741] (*Marathon*).) If, on the other hand, a contract has only a single object and that object is unlawful, in whole or in part, the entire contract is void. (Civ. Code, § 1598.)[3]

██ " 'Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.' [Citations.]" (*Marathon, supra*, 42 Cal.4th at p. 996, quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*).)

A contract that does not allocate consideration between lawful and unlawful services but instead provides for a single, undifferentiated payment for all services provided does not necessarily preclude severance. Severance may be available if some of the services provided are wholly independent of the unlawful object. (*Marathon, supra*, 42 Cal.4th at p. 997 & fn. 15; see Civ. Code, § 1608.[4]) In those circumstances, the court may determine the value of the lawful services and apportion the consideration accordingly. (42 Cal.4th at p. 997.)

██ If a contract is capable of severance, the decision whether to sever the illegal portions and enforce the remainder is a discretionary decision for the trial court to make based on equitable considerations. (*Marathon, supra*, 42 Cal.4th at pp. 992, 996, 998.)

"Two reasons for severing or restricting illegal terms rather than voiding the entire contract appear implicit in case law. The first is to prevent parties

---

[3] "Where a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void." (Civ. Code, § 1598.)

[4] "If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." (Civ. Code, § 1608.)

from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.] The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance. [Citation.]" (*Armendariz, supra*, 24 Cal.4th at pp. 123–124.)

The trial court here concluded that the property management agreement could not be severed as a matter of law because to do so would undermine the real estate licensing statutes. The California Supreme Court rejected a similar argument in *Marathon, supra*, 42 Cal.4th 974, relating to the Talent Agencies Act (Lab. Code, § 1700 et seq.). The plaintiff in *Marathon* was a personal manager that had acted as a talent agency without the required license. (*Marathon, supra*, at p. 990.) The Talent Agencies Act provided that such conduct was illegal but was silent as to the remedy for such a violation. (*Marathon, supra*, at p. 991.) The *Marathon* court found nothing in the Talent Agencies Act to repudiate the generally applicable rule of severability and no indication that the Legislature intended the doctrine of severability to be inapplicable to disputes under the act. (42 Cal.4th at pp. 991–994.)[5] The court therefore concluded that there was no conflict between Civil Code section 1599 and the Talent Agencies Act and that severability was available, but not mandatory. (*Marathon, supra*, at pp. 991, 996.) *Marathon* concluded that the trial court erred by deciding as a matter of law on a summary judgment motion that the plaintiff was not entitled to recover any compensation for services provided, affirmed the judgment by the Court of Appeal reversing the summary judgment, and stated that the Labor Commissioner and the trial court should exercise their discretion in the first instance to determine whether to sever the contract and award compensation for services legally provided without a license. (*Id.* at pp. 982, 998–999.)

█ Similarly here, the real estate licensing statutes prohibit a person from acting as a real estate broker without a real estate license. (Bus. & Prof. Code, § 10130.) The statutes here go further by expressly prohibiting an unlicensed real estate broker from maintaining an action to recover compensation for the performance of acts for which a license was required. (*Id.*, § 10136.) The real estate licensing statutes, however, do not state that an unlicensed real estate broker cannot maintain an action to recover compensation for acts for which

---

[5] *Marathon, supra*, 42 Cal.4th at pages 993–994, cited several opinions supporting the general proposition that severance may apply to contracts involving unlicensed services so as to allow the recovery of compensation for services that did not require a license. The cited opinions included *Broffman v. Newman* (1989) 213 Cal.App.3d 252, 261–262 [261 Cal.Rptr. 532], which involved a property manager acting in part as an unlicensed real estate broker, and *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 894 [64 Cal.Rptr.2d 484], which involved a business acquisition finder acting in part as an unlicensed real estate broker.

no license was required, and there is no indication that the Legislature intended to preclude the recovery of compensation for such services or to repudiate the generally applicable doctrine of severability. Moreover, we cannot conclude as a matter of law based on the complaint alone that all of the services provided under the property management agreement were dependent upon or inextricably related to the acts for which a real estate broker license was required.

*Yoo v. Jho, supra,* 147 Cal.App.4th 1249, cited by the trial court, involved an action for rescission of a contract for the purchase of a business dealing in counterfeit goods. The trial court had awarded a partial rescission after a nonjury trial, ordering the return of the defunct business to the seller and ordering the seller to return only $125,000 of the $400,000 purchase price to the buyer. (*Id.* at pp. 1253–1254.) On appeal, we concluded that because counterfeit goods accounted for a substantial portion of the sales receipts, the object of the purchase agreement was illegal. (*Id.* at p. 1255.) We therefore concluded that the entire contract was void under Civil Code section 1608 and that the trial court could not enforce the illegal bargain by awarding a partial rescission. (*Yoo, supra,* at pp. 1255–1256.) Here, in contrast, we cannot conclude, based on the complaint alone, that the property management agreement had a single, unlawful object or that the violation of the real estate licensing statutes so permeated the entire agreement as to render the entire agreement void.

We therefore conclude that the doctrine of severability may apply, in the discretion of the trial court. The trial court's conclusion that the property management agreement could not be severed as a matter of law because to do so would undermine the real estate licensing statutes was not correct, and the sustaining of the demurrer to the counts for breach of contract based on the absence of a real estate broker license was therefore erroneous.

### c. *Common Counts*

■ Recovery in quantum meruit or for money paid at the defendant's request does not require the existence of an enforceable contract. (*Huskinson & Brown v. Wolf* (2004) 32 Cal.4th 453, 458 [9 Cal.Rptr.3d 693, 84 P.3d 379] [quantum meruit]; see *Rains v. Arnett* (1961) 189 Cal.App.2d 337, 344 [11 Cal.Rptr. 299] [money paid].) Even if the entire contract was illegal and unenforceable, a plaintiff may recover the reasonable value of services rendered provided that those particular services were not legally prohibited. (*Selten v. Hyon* (2007) 152 Cal.App.4th 463, 471–473 [60 Cal.Rptr.3d 896].) Similarly, we conclude that a plaintiff may recover money paid for the benefit of the defendant and at the defendant's request provided that the particular expenditure was not legally prohibited. Some of the services provided under

the property management agreement did not require a real estate broker license, as we have stated, and the complaint on its face does not show that the expenditures made at defendants' request were legally prohibited. Accordingly, we conclude that the sustaining of the demurrer to the common counts based on the absence of a real estate broker license was also erroneous.

### 3. *The Sustaining of the Demurrer Cannot Be Affirmed Based on the Absence of a Contractor's License*

■ A plaintiff seeking to recover compensation for acts for which a contractor's license was required must allege that he or she possessed the required license at the time the acts were performed. (Bus. & Prof. Code, § 7031, subd. (a).) Section 7031, however, does not prevent a plaintiff from seeking compensation for acts for which no contractor's license was required. Some of the services provided under the property management agreement might have required a contractor's license, but others did not.[6]

The absence of a contractor's license may preclude the recovery of compensation for particular acts, but does not necessarily preclude the recovery of compensation for acts for which no contractor's license was required for the same reasons we have stated with respect to the absence of a real estate broker license. (See, e.g., *Executive Landscape Corp. v. San Vicente Country Villas IV Assn.* (1983) 145 Cal.App.3d 496, 500–501 [193 Cal.Rptr. 377].) We conclude that the sustaining of the demurrer cannot be affirmed as to any count based on the absence of a contractor's license.

### 4. *Other Contentions*

In light of our conclusion that the absence of a real estate broker license or a contractor's license does not necessarily preclude the recovery of payment for those services for which no license was required, the judgment must be reversed and we need not decide whether MKB was statutorily exempt from license requirements pursuant to Business and Professions Code sections 10131.01, subdivision (a)(3) and 7048.

---

[6] " 'Contractor,' for the purposes of this chapter, is synonymous with 'builder' and, within the meaning of this chapter, a contractor is any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith, or the cleaning of grounds or structures in connection therewith . . . ." (Bus. & Prof. Code, § 7026.)

## *DISPOSITION*

The judgment is reversed. MKB is entitled to recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.