Filed 5/19/23  Gomez v. Wells Fargo Bank CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JUANA GOMEZ, | B316972 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 20STCV45576 |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory Keosian, Judge. Affirmed.

Tamer Law and Steven Michael Tamer for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Mark G. Rackers and Anne Jane I. Zarndt for Defendant and Respondent.

## INTRODUCTION

Juana Gomez sued Wells Fargo Bank, N.A. (Wells Fargo), for damages allegedly stemming from the nonjudicial foreclosure sale of her property. Her operative first amended complaint (FAC) asserts Wells Fargo ran afoul of the Homeowners Bill of Rights (HBOR);[1] violated the Unfair Competition Law, Business and Professions Code section 17200 et seq. (UCL); and is liable for intentional infliction of emotional distress (IIED).

The trial court sustained Wells Fargo's demurrer to the FAC without leave to amend. In so doing, it concluded, among other things: (1) Civil Code[2] section 2924.11 does not apply to the deed of trust giving rise to the foreclosure sale; (2) HBOR does not authorize a claim for damages for violations of section 2924b; (3) because Gomez's HBOR claims fail, her derivative UCL claim fails; and (4) Gomez's IIED claim is time-barred. We affirm.

## BACKGROUND

Gomez owned a parcel of real property located in North Hollywood (the Property). On August 15, 2005, she executed a deed of trust on the Property (first DOT) to secure a debt of $150,300 owed to Wells Fargo. The first DOT was recorded on September 12, 2005.

In August 2006, Gomez executed a promissory note to Wells Fargo in the amount of $175,000. The note was secured by

---

1    HBOR is "a complex set of enactments [in the Civil Code] focused specifically on residential mortgages and passed as a legislative response to the ongoing mortgage foreclosure crisis in 2012." (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 295.)

2    All undesignated statutory references are to the Civil Code.

a deed of trust on the Property dated August 7, 2006 and recorded on September 27, 2006 (second DOT).

On January 10, 2018, the trustee under the second DOT, First American Title Insurance Company (First American), executed a Notice of Default and Election to Sell (Notice of Default). The Notice of Default stated Gomez failed to pay the installment of principal and interest due under the note on October 15, 2012, in addition to all subsequent installments, fines, and fees, and that, as of January 10, 2018, she owed $41,976.58. The Notice of Default further stated that, as the beneficiary of the second DOT, Wells Fargo sought to commence foreclosure and had elected to sell the Property to satisfy Gomez's obligations. The Notice of Default was recorded the day after it was executed.

On April 6, 2018, First American executed a Notice of Trustee's Sale stating that, as the trustee under the second DOT, it intended to sell the Property at a public auction on May 2, 2018. At the time, Gomez owed $219,244.74. The Notice of Trustee's Sale was recorded on April 9, 2018. According to Wells Fargo, the sale was postponed to July 31, 2018, because Gomez filed a bankruptcy petition in federal court on May 1, 2018.

In the FAC, Gomez alleges that in May 2018, she "found a buyer to purchase the . . . Property at [a] [s]hort [s]ale[3]" and

---

3       "In a short sale, the borrower sells the home to a third party for an amount that falls short of the outstanding loan balance; the lender agrees to release its lien on the property to facilitate the sale; and the borrower agrees to give all the proceeds to the lender." (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 671.) "[S]hort sales 'save banks millions in foreclosure costs' and can help homeowners 'feel like they took

"submitted all necessary [s]hort [s]ale [d]ocuments to W[ells] F[argo]." She dismissed her bankruptcy petition on June 12, 2018.

On July 30, 2018, Gomez contacted Wells Fargo to check the status of the short sale. Per Wells Fargo's instruction, she then called First American, and was told that a foreclosure sale was scheduled for July 31, 2018, at 3:00 p.m.

At approximately 9:30 a.m. on July 31, 2018, Gomez attempted to initiate another bankruptcy proceeding in federal court. Her documents were not filed until 2:30 p.m. Later that afternoon, First American told Gomez that the trustee's sale of the Property took place earlier that morning at 10:00 a.m. A Trustee's Deed Upon Sale, recorded on August 16, 2018, states a third-party purchased the Property for $376,500 on July 31, 2018. Gomez allegedly "received the excess amount over the balance owed on the Deed of Trust," which the record reflects is approximately $150,000.

In November 2020, Gomez filed her original complaint initiating the underlying suit. Wells Fargo filed a demurrer to her complaint in February 2021, which the trial court sustained in part and overruled in part. It also granted Gomez leave to amend.[4]

Gomez filed her FAC in June 2021. The FAC asserts five causes of action: violation of section 2924.11 (first cause of action); violation of section 2924b, subdivision (b)(1) (second

_____

responsibility for the obligation to pay [their creditors] back.'" (*Id.* at p. 673.)

4      The appellate record does not contain copies of Gomez's original complaint, Wells Fargo's demurrer filed in February 2021, or the trial court's order ruling on the demurrer.

cause of action); violation of section 2924b, subdivision (b)(2) (third cause of action); violation of the UCL (fourth cause of action); and IIED (fifth cause of action).

In July 2021, Wells Fargo filed a demurrer to the FAC, arguing Gomez failed to plead sufficient facts to state a cause of action, and that her IIED claim is time-barred. The trial court held a hearing on the demurrer on September 9, 2021, and took it under submission.

On September 28, 2021, the trial court issued its written decision sustaining the demurrer to the FAC without leave to amend. As noted above, the court held, among other things: (1) section 2924.11 does not apply because the lien giving rise to the foreclosure sale is not the most senior deed of trust encumbering the Property; (2) Wells Fargo's alleged violations of section 2924b, subdivision (b), do not "support a claim for damages following the recording of a trustee's deed upon sale[ ]"; (3) because Gomez's "predicate HBOR violations . . . must dismissed[,]" they "cannot furnish a basis for a UCL claim[ ]"; and (4) the IIED claim is time-barred.

The trial court entered a judgment of dismissal on October 13, 2021. Gomez timely appealed.

## DISCUSSION

### I.    Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded,

5

but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"We review the correctness of the trial court's action in sustaining the demurrer, not the court's statement of reasons for its action." (*Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 610.) Accordingly, "[w]e affirm the judgment if it is correct for any reason, regardless of the trial court's stated reasons." (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802.)

## II.    Analysis

In asserting the judgment must be reversed, Gomez does not dispute that her IIED is time-barred. Nor does she dispute that her UCL claim is derivative of her HBOR claims, and therefore her fourth cause of action fails if her first, second, and third causes of action fail. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails"]; see also *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 178 [UCL claims that are derivative of other substantive causes of action "stand or fall

6

depending on the fate of the antecedent substantive causes of action"].) Instead, Gomez contends the trial court erred by sustaining the demurrer without leave to amend because she pled sufficient facts to state a claim for damages under HBOR, and because she has adequately alleged she was prejudiced by the alleged HBOR violations. "Although we examine a trial court's decision independently [on de novo review], the scope of our review is limited to those issues that have been adequately raised and supported in [Gomez's] brief." (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

### A. Violation of Section 2924.11

As noted above, Gomez's first cause of action asserts Wells Fargo violated section 2924.11. When her claim allegedly accrued in 2018, section 2924.11, subdivision (a), stated: "If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative."

Gomez contends the trial court erred by sustaining the demurrer with respect to her first cause of action because she pled sufficient facts to state a claim under section 2924.11, subdivision (a). She emphasizes that the FAC alleges she "submitted all necessary short sale documents to Wells Fargo on or about May 2018." Therefore, Gomez argues, she adequately alleged "the foreclosure sale was conducted in violation of

7

[s]ection 2924.11 because the foreclosure prevention alternative of a short sale was being evaluated."

We reject Gomez's argument because section 2924.11 does not apply in this case. By its own express terms, section 2924.11 "applie[d] only to mortgages or deeds of trust as described in [s]ection 2924.15." (§ 2924.11, subd. (e) (2018).) Section 2924.15, subdivision (a) (2018), in turn, stated: "Unless otherwise provided, [s]ections 2923.5, 2923.7, and 2924.11 shall only apply to *first lien mortgages or deeds of trust* that are secured by owner-occupied residential real property containing no more than four dwelling units." (Italics added.) For purposes of HBOR, "'[f]irst lien' means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale." (§ 2920.5, subd. (d).)

As discussed above, the record establishes—and Gomez does not dispute—the Property was encumbered by two deeds of trust. The first DOT, which secured Gomez's debt to Wells Fargo in the amount of $150,300, was executed on August 15, 2005, and recorded on September 12, 2005. The second DOT, the deed of trust giving rise to the foreclosure sale in this case, was dated August 7, 2006, and recorded on September 27, 2006. Consequently, the second DOT is junior to the first DOT. (See *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 921 [noting "the loans at issue in [the] case were junior loans" because they were "the second and third loans that [the] plaintiff secured using [his] property as collateral].) The second DOT therefore is not a "first lien . . . deed[ ] of trust" within the meaning of section 2924.15, subdivision (a) (2018), as it is not "the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale." (§ 2920.5,

subd. (d).) Thus, the trial court correctly sustained the demurrer to Gomez's first cause of action because section 2924.11 does not apply in this case. (§§ 2924.11, subd. (e) (2018), 2924.15 (2018).)[5]

## B. Violation of Section 2923.5

Next, Gomez contends reversal is required because she adequately alleged Wells Fargo violated section 2923.5, subdivision (a)(2). In 2018, that statute provided, in relevant part: "A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (§ 2923.5, subd. (a)(2) (2018).) According to Gomez, "[t]he Notice of Default was . . . recorded in violation of [s]ection 2923.5[ ]" because "Wells Fargo did not at any time reach out to [her] to

---

5    At oral argument, Gomez asserted that based on the plain language of section 2924.15, subdivision (a) (2018), section 2924.11 applies in this case. We need not address her contention on this point, as it was not raised in the trial court or in her appellate brief. (*In re Rita M.* (1991) 235 Cal.App.3d 403, 411-412 ["As a general rule, a party is precluded from urging on appeal any point not raised in the trial court"]; *Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1027 fn. 2 ["We need not consider an argument not mentioned in the briefs and raised for the first time at oral argument."].) In any event, we conclude it is meritless because our Supreme Court implicitly rejected Gomez's interpretation of HBOR in *Sheen v. Wells Fargo Bank, N.A.*, *supra*, 12 Cal.5th 905, by acknowledging "HBOR d[id] not apply[ ]" (*id.* at p. 921) where the plaintiff's claim for damages arose out of "'a second-lien residential mortgage from Wells Fargo' that was 'secured by [the plaintiff's] [p]roperty pursuant to a deed of trust.'" (*Id.* at p. 925, fn. omitted.)

discuss options to prevent foreclosure[,]" and instead "intentionally hid the foreclosure from [her] . . . ."

We reject Gomez's contention for two reasons. First, the FAC does not assert a cause of action for violation of section 2923.5, and it is well-settled that a party cannot assert a new theory of liability for the first time on appeal. (See *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 ["'A party is not permitted to change his [or her] position and adopt a new and different theory on appeal'"]; see also *Beroiz v. Wahl* (2000) 84 Cal.App.4th 485, 498 fn. 9 [noting "appellants may not raise a factually novel legal theory of liability on appeal"].) Second, even assuming, arguendo, the FAC had alleged Wells Fargo violated section 2923.5, the claim would fail. Like section 2924.11, section 2923.5 "only appl[ies] to mortgages or deeds of trust described in [s]ection 2924.15." (§ 2923.5, subd. (f) (2018).) Therefore, for the reasons discussed in section II.A., *ante*, section 2923.5 does not apply in this case, as the second DOT is not a "first lien mortgage or deed of trust." (§ 2924.15, subd. (a) (2018).) Consequently, Gomez's argument based on section 2923.5 fails to demonstrate reversible error.

### C. Violations of Section 2924b

Gomez contends the trial court erred by sustaining the demurrer to her second and third causes of action because she adequately alleged Wells Fargo violated section 2924b, subdivision (b)(1) and (2). Those statutory provisions require a "mortgagee, trustee, or other person authorized to record the notice of default or the notice of sale" to: (1) mail a copy of the notice of default to the borrower "[w]ithin 10 business days following recordation of the notice of default[ ]" (§ 2924b, subd. (b)(1)); and (2) mail a "copy of the notice of the time and place of

sale" to the borrower "[a]t least 20 days before the date of sale[ ]" (*id.*, subd. (b)(2)). Gomez asserts she has pled sufficient facts to withstand Wells Fargo's demurrer because "she alleges in the [FAC] that she was not served with either the Notice of Default or the Notice of the Trustee's [S]ale."

Gomez's contention is unavailing. When her claims allegedly accrued in 2018, HBOR authorized a private right of action for damages where a lender violated any one of four statutory provisions. (§ 2924.12, subd. (b) (2018).) Specifically, section 2924.12, subdivision (b) (2018) allowed a borrower to recover "actual economic damages . . . resulting from a material violation of [s]ection 2923.5, 2923.7, 2924.11, or 2924.17[.]" Section 2924b was not listed amongst the statutory provisions giving rise to monetary liability under HBOR. (§ 2924.12, subd. (b) (2018).) Because "'the expression of some things in a statute implies the exclusion of others not expressed[,]'" HBOR's plain language reflects the Legislature "chose to provide for [monetary] relief for some HBOR violations, but not for a violation of section [2924b]." (*Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 159.) Consequently, the trial court correctly sustained the demurrer to the second and third causes of action because Wells Fargo's alleged violations of section 2924b do not give rise to a claim for damages. (See *id.* at p. 161 [concluding trial court properly sustained the demurrer to the borrower's cause of action for violation of section 2924, subdivision (a)(6) because the Legislature did not "authoriz[e] injunctive relief for violations of" that statutory provision].)

### D. Leave to Amend

As noted above, where, as here, a demurrer is sustained without leave to amend, we must "decide whether there is a

11

reasonable possibility that the defect[s] [in the pleading at issue] can be cured by amendment[.]" (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) However, "[t]he burden of proving such reasonable possibility is squarely on the plaintiff[ ]" (*ibid.*), who "must show in what manner he [or she] can amend his [or her] complaint and how that amendment will change the legal effect of his [or her] pleading." (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.)

Although not entirely clear, Gomez appears to argue that the trial court erred by declining to afford her leave to amend because the FAC adequately alleged she was prejudiced by Wells Fargo's HBOR violations, and because "the [FAC] can be amended to more clearly to state the prejudice to [her]." We disagree. Even assuming the truth of her contentions, Gomez has not shown how she can amend the FAC to cure the deficiencies in her HBOR claims discussed above. Thus, we discern no error in the court's decision to sustain the demurrer to the FAC without leave to amend.

## DISPOSITION

The judgment of dismissal is affirmed. Respondent shall recover its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, Acting P. J.

We concur:


COLLINS, J.


ZUKIN, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.