**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARBON CREST, LLC, a Delaware Limited Liability Company, | No. 22-15707 |
| Plaintiff-counter-defendant-Appellant, | D.C. No. 3:19-cv-08179-WHA |
| v. | MEMORANDUM[*] |
| TENCUE PRODUCTIONS, LLC, a California Limited Liability Company; JEFFREY D. WILK, an individual, | |
| Defendants-counter-claimants-Appellees, | |
| v. | |
| PAUL LEWIS, | |
| Counter-defendant. | |

| | |
|---|---|
| CARBON CREST, LLC, a Delaware Limited Liability Company, | No. 22-15740 |
| Plaintiff-counter-defendant-Appellee, | D.C. No. 3:19-cv-08179-WHA |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

v.

TENCUE PRODUCTIONS, LLC, a
California Limited Liability Company;
JEFFREY D. WILK, an individual,

        Defendants-counter-
        claimants-Appellants,

 and

PAUL LEWIS,

        Counter-defendant.

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and submitted November 14, 2023
San Francisco, California

Before: S.R. THOMAS, FORREST, and MENDOZA, Circuit Judges.

Plaintiff and counter-defendant Carbon Crest, LLC appeals a district court

decision denying its breach of contract claims and contract damages. Defendants

and counter-claimants Tencue Productions, LLC and Jeffrey D. Wilk cross appeal

from the district court's grant of $1.5 million in equitable relief to Carbon Crest.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and

reverse in part the district court's decision and vacate the district court's equitable

award.  Because the parties are familiar with the factual and procedural history of the case, we need not recount it here.

I

The district court correctly concluded that California law governs the Sales Process Advisory Agreement (SPAA) as to whether a broker's license was required, and properly concluded that Carbon Crest unlawfully provided broker services in California without a license under the SPAA, making the SPAA unenforceable as to the broker provisions.

A

The SPAA contains a Delaware choice-of-law provision, but California law still applies to the licensing issue under Restatement (Second) of Conflict of Laws § 187(2) (Am. L. Inst. 1971).  First, California law would apply in the absence of the choice-of-law clause.  Here, the "particular issue" is whether the SPAA is unenforceable because Carbon Crest performed unlicensed broker work in California under the SPAA.  *See id.* at § 188(2).  "[T]he place of performance . . . at the time of contracting [w]as either uncertain or unknown," *id.* at § 188(2) cmt.e., and the other relevant factors weigh towards the application of California law.  Tencue—Carbon Crest's only client at the time—was incorporated and did business in California, Paul Lewis's past work with Tencue occurred in California,

3

Carbon Crest performed SPAA work in California, and Lewis maintained an address in California. To the extent that some factors point to other states, these factors do not outweigh the factors for California, particularly because the place of performance at contracting was unknown. California law would therefore apply in the absence of the choice-of-law provision.

Second, Delaware law on broker licensing is contrary to a fundamental policy of California. Delaware does not require a license for brokering a business opportunity, but California "legislative[ly] mandate[s]" such a license under Cal. Bus. & Prof. Code § 10130. *Pitzer Coll. v. Indian Harbor Ins. Co.*, 8 Cal. 5th 93, 102 (2019); *see also First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1156 (9th Cir. 2015). Moreover, in California, "[t]he purpose of . . . licensing requirements is to protect the public from incompetent or untrustworthy practitioners." *Salazar v. Interland, Inc.*, 152 Cal. App. 4th 1031, 1036 (2007) (citation omitted). Further "the promotion of competency and integrity in those called upon by the public to perform complex duties involving trust is a salutary purpose, and the policy underlying the licensing statutes must be given full effect." *Tyrone v. Kelley*, 9 Cal. 3d 1, 12 (1973). Delaware law on broker licensing is therefore contrary to California's fundamental policies.

Third, California has a materially greater interest than Delaware in enforcing its licensing law here. *Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1316, 1329 (2008)*; Guardian Savs. & Loan Ass'n v. MD Assocs*., 64 Cal. App. 4th 309, 322–23 (1998). California has an interest in enforcing its licensing law because Tencue is a California limited liability company, and Carbon Crest provided some services for Tencue in California under the SPAA. *Brack*, 164 Cal. App. 4th at 1316. In comparison, Delaware's only connection to this case is that Carbon Crest is a Delaware limited liability company, so Delaware has only a "general interest in enforcing the provisions of contracts made by one of its citizens." *Id.* at 1329. The facts "peculiar" to the *Guardian* Court's "limit[ed]" holding are also not presented here because Tencue is a California company. *See Guardian*, 64 Cal. App. 4th at 323. Accordingly, California has a materially greater interest than Delaware in enforcing its licensing law here.

For these reasons, California law governs the SPAA on the licensing issue.

B

Under California law, Carbon Crest unlawfully provided broker services in California without a license under the SPAA. Even "*de minimis* brokerage activity in California [without a license] would bar recovery," *Consul Ltd. v. Solide Enterprises, Inc.*, 802 F.2d 1143, 1151 n.8 (9th Cir. 1986), and Carbon Crest did

5

more than "the bare act of introduction," *Crofoot v. Spivak*, 113 Cal. App. 2d 146, 147 (1952), or "merely bringing the parties together," *Tyrone*, 9 Cal. 3d at 9, without a license. For example, Carbon Crest does not dispute that it organized at least one "roadshow meeting" in California, and, while there, "handled in-depth financial questions" with potential Tencue buyers. Accordingly, applying California law, Carbon Crest acted as an unlawful broker in California under the SPAA.

Because California law governs the SPAA on the licensing issue, and Carbon Crest acted as an unlawful broker in California under the SPAA, the SPAA is unenforceable as to the broker provisions.

C

The district court properly concluded that the SPAA was not severable between its broker and non-broker provisions. California Civil Code Section 1599 provides that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest." If a contract provides a single payment for both lawful and unlawful services, severance "may be available if some of the services provided are wholly independent of the unlawful object." *MKB Mgmt., Inc. v. Melikian*, 184 Cal. App. 4th 796, 803 (2010). Here, the SPAA provided for one

6

payment and had a single object:  the sale of Tencue.  Carbon Crest's non-broker activities facilitated this object; they were not wholly independent of it.  Therefore, the district court correctly concluded that the contract was incapable of severance.

Because the SPAA is unenforceable as to its broker provisions, and is not severable as to its broker and non-broker provisions, we affirm the district court's holding that Carbon Crest cannot recover in contract under the SPAA.

II

California does not allow equitable recovery for Carbon Crest's unlawful broker services, so Carbon Crest cannot recover in equity.  Under California law, a plaintiff who has no contract remedy for work performed because that plaintiff was an unlicensed broker cannot recover in equity.  *See Castillo v. Barrera*, 146 Cal. App. 4th 1317, 1328 (2007); *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal. 4th 412, 419–20, 423 (2005).  The broker provisions of the SPAA were unlawful because Carbon Crest was unlicensed, *see supra* § I.B., so Carbon Crest cannot recover in equity for the broker work it performed. *Castillo*, 146 Cal. App. 4th at 1320, 1328.

This is not a "compelling case[]" in which we should depart from the usual rule.  *See Asdourian v. Araj*, 38 Cal. 3d 276, 292 (1985).  Rather, Carbon Crest is just like the *Castillo* plaintiff who could not recover in equity because he lacked a

7

required license. *Castillo*, 146 Cal. App. 4th at 1328. The *Castillo* defendant was a repeat player, *id.* at 1320, just as Tencue was a sophisticated business. The *Castillo* plaintiff provided excellent services at a reasonable rate, *id.* at 1320–21, just as the district court found Carbon Crest did. And the *Castillo* defendant left the plaintiff high and dry, *id.* at 1321, just as Tencue left Carbon Crest high and dry. Yet the *Castillo* Court still denied equitable relief, reasoning that, "[k]nowing they will receive no help from the courts in recovering for their illegal activities, managers are less likely to enter into illegal arrangements." *Id.* at 1329 (quoting *Yoo v. Robi*, 126 Cal. App. 4th 1089, 1104 (2005)). Here, "[brokers] are less likely to enter into illegal arrangements," if Carbon Crest does not recover in equity. *Id.* Accordingly, Carbon Crest cannot recover in equity for the broker services it performed. Therefore, we must reverse the district court's holding that Carbon Crest is entitled to equitable relief, and vacate the $1.5 million recovery based thereon.

**AFFIRMED in part; REVERSED in part; and VACATED in part**.